IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

KENDALL A.,[1]                          §
                                        §
          Plaintiff,                    §
                                        §
v.                                      §          No. 1:18-CV-0031-BP
                                        §
ANDREW M. SAUL, [2]                     §
Commissioner of Social Security,        §
                                        §
          Defendant.                    §

## REPORT AND RECOMMENDATION

Pursuant to 42 U. S. C. § 405(g), Plaintiff seeks judicial review of a decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[3]    (*See* ECF No. 1, Compl.).    The Commissioner has filed an answer, (*see* ECF No. 11, Def.'s Answer), and a certified copy of the transcript of the administrative proceedings, (*see* ECF No. 13, SSA Admin. R. [hereinafter "R."]), including the hearing before the Administrative Law Judge ("ALJ").    The parties have briefed the issues.    (*See* ECF No. 16, Pl.'s Opening Br.; ECF No. 17, Def.'s Resp. Br.; ECF No. 18, Pl.'s

---

[1]To protect the privacy of plaintiffs in social security cases, the undersigned identifies the plaintiff only by first name and last initial.

[2]Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).Title II governs disability insurance benefits.    *See* 42 U.S.C. §§ 401-34.    The Court will often refer to Plaintiff as Claimant, a designation used in social security cases.

[3]Title II governs disability insurance benefits.    *See* 42 U.S.C. §§ 401-34.    The Court will often refer to Plaintiff as Claimant, a designation used in social security cases.

Reply Br.).    The United States District Judge referred the case pursuant to 28 U.S.C. § 636, and the parties have not consented to proceed before a United States Magistrate Judge.

In accordance with Special Order No. 3-326 issued on June 15, 2019, the undersigned will preside over all civil cases assigned or referred to Magistrate Judge E. Scott Frost until a replacement magistrate judge has been appointed for the Abilene Division.    Because the parties have not consented to have all further proceedings conducted by a magistrate judge, the undersigned issues this report and recommendation; directs the Clerk of Court to reassign the case to Senior District Judge Sam R. Cummings for all further proceedings; and after considering the pleadings, briefs, and administrative record, recommends that the Court reverse the Commissioner's decision and remand this case for further administrative proceedings.

## STATEMENT OF THE CASE

Plaintiff filed an application for disability insurance benefits in September 2013, alleging a September 16, 2012 onset of disability.    R. 220.    She has identified the following conditions that limit her ability to work: (1) attention deficit hyperactivity disorder ("ADHD"); (2) two torn, bulging discs in her lower back; (3) degenerative disc disease; (4) mild dextroscoliosis; (5) mild central canal stenosis; and (6) significant hearing loss.    R. 253.

The Commissioner denied the application initially and on reconsideration.    *See* R. 110-14, 118-21.    On October 4, 2017, and May 26, 2017, Administrative Law Judge ("ALJ") Larry C. Marcy held hearings on Plaintiff's claim.    *See* R. 34-69.    At the first hearing, Plaintiff amended her alleged date of onset to September 1, 2013.    *See* R. 314-15.    The ALJ issued an unfavorable decision following the first hearing, but the Appeals Council ("AC") vacated that decision and remanded for additional administrative proceedings.    *See* R. 10, 107-08.

2

The AC viewed the record as "unclear" as to "whether there are jobs that exist in significant numbers in the national economy that the claimant can perform," because the hypothetical posed to the vocational expert did not include a specific restriction that the ALJ had found in his "articulation of the residual functional capacity," i.e., a need "to alternate between standing and sitting at will."   R. 107.   The AC instructed the ALJ to take certain actions on remand, including "before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations."   R. 107-08.

On October 4, 2017, the ALJ issued a second unfavorable decision finding that Plaintiff was not disabled and was capable of performing work that existed in significant numbers in the national economy.   R. 10-28.   Applying the sequential, five-step analysis set out in the regulations (20 C.F.R. § 404.1520(a)(4)) the ALJ first determined that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision.   R. 11.   The ALJ next determined that Plaintiff suffers from the following severe impairments: "degenerative changes in the lumbar spine, obesity, bilateral sensorineural hearing loss, right calcaneal spur, attention deficit-hyperactivity disorder ("ADHD") and personality disorder NOS."   *Id.*   Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of any impairment in the listings.[4]   *Id.*

---

[4]Section 404.1525 explains the purpose and use of the listings of impairments.

3

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC")[5] to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b).[6]   R. 21-26.   The ALJ found that Plaintiff was limited to lifting/carrying twenty pounds, ten pounds frequently and could stand or walk, "off and on, for a total of six hours out of an eight-hour workday."   R. 21. Due to Plaintiff's pain complaints, obesity, and calcaneal spur, the ALJ found that "she must alternate sitting and standing at will, and she can only occasionally stoop, kneel, crawl, and crouch."   *Id.*   The ALJ noted that this "residual functional capacity is quite generous, in light of the absence of significant physical findings, and affords the claimant the great benefit of every doubt and the most liberal interpretation of her symptoms."   *Id.*   The ALJ later reiterated those limitations while also adding: "Due to hearing loss, she must work in a quiet environment, she cannot use a telephone to communicate, and she can hear normal conversation if it is face-to-face. She is limited to simple tasks.   She can get along with the public and coworkers on a frequent

---

[5]**Error! Main Document Only.**Section 404.1545(a)(1) explains that a claimant's RFC "is the most [he or she] can still do despite [his or her] limitations."   When a case proceeds before an ALJ, it is the ALJ's sole responsibility to assess the claimant's RFC.   20 C.F.R. § 404.1546(c).   However, that assessment must be "based on all of the relevant medical and other evidence" of record.   *Id.* § 404.1545(a)(3).

[6]**Error! Main Document Only.**The regulations address physical exertion requirements and explain:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).   In general, light work "requires being on one's feet" for six hours of an eight-hour workday while "[s]itting may occur intermittently during the remaining time."   Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2, SSR 83-10 (PPS-101), 1983 WL 31251, at *5-6 (S.S.A. 1983).

basis."   R. 26.

Based upon the RFC determination and testimony from a vocational expert ("VE") about the exertional demands and skill requirements of Plaintiff's prior jobs, the ALJ concluded that Plaintiff could not perform her past relevant work.   *Id.*   Considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy.   R. 26-28.   Relying on the Medical-Vocational Guidelines ("Grids") contained in Appendix 2 of the regulations, 20 C.F.R. Part 404, Subpt. P, the ALJ noted that Plaintiff would not be disabled if she retained the RFC for a full range of light work.   R. 27.

While recognizing that Plaintiff's additional exertional and nonexertional limitations pre-cluded a full range of light work, the Grids could "be used as a framework for decisionmaking in finding there are a significant number of jobs in the national and regional economies the claimant can perform."   *Id.*   The ALJ thus utilized testimony from the VE to find at Step 5 of the evalu-ative sequence that "there are a significant number of jobs in existence in the national and regional economies that the claimant can perform."   *Id.*   The ALJ then concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any relevant time.   R. 28.

The Appeals Council received and considered Plaintiff's reasons (Ex. 20E) for disagreeing with the ALJ decision when it denied review on January 4, 2018.   *See* R. 1-4.   It found that those reasons do not provide a basis for changing the decision.   R. 1.   The ALJ's decision is the Com-missioner's final decision and is properly before the Court for review.   *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "in-cludes the Appeals Council's denial of [a claimant's] request for review").

5

Plaintiff commenced this appeal on February 27, 2018.   (*See* Compl.).   She presents three issues for review.   (*See* ECF No. 16 at 1).

## FACTUAL BACKGROUND

With a birth date of April 6, 1971, R. 220, Plaintiff was a "younger individual" under applicable regulations throughout the relevant period, *see* 20 C.F.R. § 404.1563(c).   She has an Associate's Degree, R. 254, and past relevant work as a shoe salesperson, billing clerk, claims clerk, and real estate clerk, R. 26.   She claims her physical and mental impairments render her disabled.

## LEGAL STANDARD

In general,[7] a person is disabled within the meaning of the Social Security Act, when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A).   "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit."   *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)).   To evaluate a disability claim, the Commissioner employs the previously mentioned

> five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the

---

[7]**Error! Main Document Only.**The Act provides an alternate definition of disability for blind individuals who are fifty-five years of age or older.   *See* 42 U.S.C. § 423(d)(1)(B).   This provision is inapplicable on the current facts.

impairment prevents the claimant from doing any other substantial gainful activity. *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).    If, at any step, the Commissioner determines that the claimant is or is "not disabled, the inquiry is terminated."    *Id.* at 448.    The Commissioner must assess the claimant's RFC before proceeding to Steps 4 and 5.    *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).    For Steps 1 through 4, the claimant has the burden to show disability, but the Commissioner has the burden at Step 5 to "show that there is other substantial work in the national economy that the claimant can perform."    *Audler*, 501 F.3d at 448.    If the Commissioner carries that Step 5 burden, "the burden shifts back to the claimant to rebut th[e] finding" that he or she can perform other work that is available in the national economy.    *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

"Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied."    *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence."    *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton*, 209 F.3d at 452).    "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's."    *Perez*, 415 F.3d at 461.    The courts neither "try the questions *de novo*" nor substitute their "judgment for the Commissioner's, even if [they] believe the evidence weighs against the Commissioner's decision."    *Masterson*, 309 F.3d at 272. The Commissioner resolves conflicts of evidence.    *Sun*, 793 F.3d at 508.

7

## ANALYSIS

This appeal raises the following issues: (1) whether the vocational expert's testimony is consistent with the DOT given Claimant's restriction to a quiet work environment; (2) whether Claimant's need to alternate between sitting and standing "at will" is sufficiently definite; and (3) whether the ALJ properly considered opinions of a consultative examiner, Stephen Osborn, Ph.D. (ECF No. 16 at 1).

### A.    Consistency Between VE Testimony and the DOT

The ALJ denied the claim for disability benefits at Step 5 of the evaluative sequence.    At that step, "the Commissioner must show that there is other substantial work in the national economy that the claimant can perform."    *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). The applicable regulation requires that "other work (jobs) that [the claimant] can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country)."    20 C.F.R. § 404.1560(c)(1).    The Commissioner, furthermore, is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [his or her] residual functional capacity and vocational factors."    *Id.* § 404.1560(c)(2).    In cases in which the ALJ cannot rely on the Grids to determine disability, "the ALJ must rely upon expert vocational testimony or other similar evidence to establish that such jobs exist."    *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

To clarify the "standards for the use of vocational experts (VEs) who provide evidence at hearings before administrative law judges (ALJs), vocational specialists (VSs) who provide

8

evidence to disability determination services (DDS) adjudicators, and other reliable sources of occupational information in the evaluation of disability claims," the Social Security Administration issued guidance regarding those matters.  *See* Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000).   In particular, it emphasized

> that before relying on VE or VS evidence to support a disability determination or decision, our adjudicators must:   Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and explain in the determination or decision how any conflict that has been identified was resolved.

*Id.*   And with respect to addressing conflicts in occupational information it provides:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.   When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.   At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict.   The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

*Id.* at *2.

Courts have interpreted SSR 00-4p as establishing "an affirmative responsibility to ask about any possible conflict between VE evidence and the DOT" before the administrative adjudicator relies "on VE evidence to support a determination of not disabled."   *See Graves v. Colvin*,

837 F.3d 589, 592 (5th Cir. 2016) (citations and internal quotation marks omitted).    And, when

the VE relies on the DOT for his or her testimony, it is error for an ALJ to fail to ask the VE

whether the testimony is consistent with the DOT.    *Id.*

At the first hearing, Claimant testified about her hearing loss and the problems it presents.

R. 40.    She testified that she has "to actually be facing somebody to be able to understand what

they're saying" and that she has difficulties hearing people on telephone calls.    *Id.*    She also

testified that she does not wear hearing aids because they hurt her ears and were shown not to be

very effective in any event.    R. 41.    At that hearing, the ALJ set out a hypothetical individual

with a similar RFC found for Claimant except he omitted the restriction on alternating standing

and sitting at will.    R. 47.    That omission is not at issue, but limitations resulting from her hear-

ing impairment are at issue.    In that respect, the ALJ initially included in his hypothetical: "She

has some hearing loss but is able to hear normal conversation that – but not – she would have

difficulty talking on the telephone.    The conversation needs to be face-to-face for her."    *Id.*

The VE identified three jobs: machine tender, office helper, and storage facility rental clerk.    R.

46-47.

At the second hearing, the ALJ again set out a hypothetical individual with RFC restrictions

found in his decision denying benefits, including: "She has hearing loss, so her hearing environ-

ment would need to be quiet.    She cannot use the telephone to communicate.    She can hear nor-

mal conversation if it's face-to-face."    R. 63.    The same VE testified that with the limitations

identified by the ALJ, such an hypothetical individual could perform three jobs which were each

"SVP: 2" and "light work": (1) small products assembler with 9,100 Texas jobs and 266,000 in

the national economy; (2) machine tender with 1,800 Texas jobs and 61,000 national jobs; and (3)

10

bench assembler with 5,300 Texas jobs and 207,000 jobs nationally.    R. 63-64.    The VE did not discuss the noise levels for the jobs, specifically address the hearing limitations of the hypothetical individual, or provide DOT numbers for the jobs.    *See id.*    Furthermore, the ALJ did not ask whether the jobs were consistent with the DOT.    *See id.*    Although the ALJ gave Claimant's attorney at the hearing an opportunity to cross-examine the VE, there were no questions to him regarding a disparity between the identified jobs and the DOT.    *See* R. 64.

While the ALJ did not inquire about the consistency of the identified positions with the DOT, he specifically stated: "Pursuant to Social Security Ruling 00-4p, I find the vocational expert's testimony as to the skill level and exertional level of the jobs he identified is consistent with the information contained in the *Dictionary of Occupational Titles*."    R. 27.    Accepting the testimony and opinions of the VE, the ALJ found Claimant not disabled at Step 5.    *See id.*

The SCO addresses numerous environmental conditions, including "Noise Intensity Level."    *See* SCO, App. D Environmental Conditions.    For that environmental condition it sets out five-code levels ranging from one (very quiet) to five (very loud).    *Id.*    Code 2 reflects a "Quiet" work environment and lists the following illustrative examples: "library, many private offices, funeral reception, golf course, art museum."    *Id.*    Claimant represents, and the Commissioner does not contest, that the DOT includes no unskilled, light or sedentary jobs of small products assembler, bench assembler, or machine tender that can be performed in a quiet environment.

The Commissioner concedes that the ALJ failed to ask the VE about conflicts between his testimony and the DOT but argues that Claimant has failed to carry her burden to show the error is not harmless.    (ECF No. 17 at 6).    This conceded failure of the ALJ is undoubtedly error.

11

*See Graves*, 837 F.3d at 592.    But, as pointed out in *Graves*, the claimant bears the burden to show "that he or she was prejudiced by the ALJ's failure."    *Id.* (quoting *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000)).    Unless there is an actual conflict, this type of procedural error is "harmless and does not warrant reversal."    *Id.* at 592 & n.2.

    In this instance, Claimant has carried her burden.    Unlike the claimant in *Graves*, the claimant here has shown an actual conflict between the VE testimony and the jobs he identified from the DOT.    In this case, the VE identified three jobs that do not provide the quiet environment that the ALJ included in his hypothetical questioning.    Because the ALJ specifically included that specific restriction and the VE identified three jobs that do not qualify as quiet under the SCO, there is an actual conflict between the testimony and the DOT.    Furthermore, because the ALJ relied on those three jobs to carry the Commissioner's burden at Step 5, his denial of benefits is not supported by substantial evidence and the Claimant has been prejudiced.

    The Commissioner interprets Claimant's "need for a quiet environment" solely as a need "to hear normal conversation."    (ECF No. 17 at 6).    But nowhere does the ALJ put such gloss on his environmental restriction.    Without the ALJ resolving the apparent conflict, one is left to speculate as to why he separately included the limitation to a quiet environment.

    Relatedly, the Commissioner argues that no identified job requires any ability to talk or hear; thus, making them consistent with the hypothetical.    (ECF No. 17 at 6).    Under the DOT and SCO, a quiet environment is separate and distinct from talking and hearing abilities.    For an individual with a complete inability to hear, a restriction to a quiet environment might be mean-ingless.    But the Claimant here can hear while needing specific accommodations for her hearing loss, i.e., a quiet environment, no telephone communication, and face-to-face communication for

12

normal conversation.   The quiet environment restriction has meaning and is inconsistent with the identified positions.   To rule otherwise would require the Court to accept the Commissioner's position that a quiet environment is needed only so that the Claimant can hear normal conversation. However, that position is speculative in the absence of clarification by the ALJ or testimony from a VE explaining why the identified positions are consistent with the restriction to a quiet work environment.

For these reasons, the Court should find that the ALJ committed prejudicial error when he failed to ask the VE about the apparent conflict between the identified jobs and the DOT. Claimant has carried her burden to show an actual conflict between the identified positions and the DOT.   Accordingly, the Court should remand this case for further administrative proceedings.

Furthermore, as pointed out by Claimant, (ECF No. 16 at 7 n.4), the ALJ also erred by not following the explicit remand order of the Appeals Council.   Perhaps because Claimant merely asserts it briefly in a footnote, the Commissioner does not address this alleged error.   (*See* ECF No. 17).   While the Court should not view the lack of response as any sort of concession by the Commissioner, it should note that 20 C.F.R. § 404.977(b) indeed requires ALJs to "take any action that is ordered by the Appeals Council."   In its order of remand, the Appeals Council specifically directed the ALJ to identify and resolve any conflicts between the VE testimony and the DOT and SCO.   *See* R. 107-08.   Failure to comply with § 404.977(b) and the remand order of the Appeals Council is legal error that mandates reversal and remand.   *See Stepp v. Colvin*, No. 8:15-CV-1183-T-27AAS, 2016 WL 4150479, at *6 (M.D. Fla. July 11, 2016) (recommendation of Mag. J.) *adopted by* 2016 WL 4157334 (M.D. Fla. Aug. 2, 2016); *Thompson v. Barnhart*, No. CIV.A. 05-395, 2006 WL 709795, at *12 (E.D. Pa. Mar. 15, 2006); *Hutchison v. Apfel*, No. 2:98-V-087, 2001

13

WL 336986, at *11 (N.D. Tex. Mar. 9, 2001) (recommendation of Mag. J.) *adopted by* unpub. order (N.D. Tex. Mar. 29, 2001).

## B.  Other Issues

Claimant also urges the Court to reverse the Commissioner's decision because the ALJ allegedly ambiguously defined Claimant's need to sit and stand alternately as "at will" and improperly considered opinions of a consultative examiner.    In light of the noted reversible errors of the ALJ, there is no need to address these other errors.    But as argued by the Commissioner, neither issue presents an adequate reason to reverse the decision to deny benefits.    A brief discussion suffices for each of these issues.

### 1. Ambiguity of "At Will"

Relying on SSR 96-9p, Claimant argues that the ALJ did not sufficiently define her sit-stand restriction to the vocational expert.    (ECF No. 16 at 8).    First, that SSR facially applies in cases involving RFC assessments for less than a full range of sedentary work.    *See* Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, SSR 96-9p, 1996 WL 374185 (July 2, 1996).    Based on the RFC assessment in this case, SSR 96-9p appears inapplicable.

But even to the extent SSR 96-9p applies by analogy when considering any need to alternate between sitting and standing, it does not reveal error in this case.    An "RFC limitation and hypothetical questioning of a VE is sufficiently specific when an ALJ includes an 'at will' or 'as needed' requirement to a sit/stand limitation."    *Staggs-Homady v. Colvin*, No. CIV-13-1368-D, 2014 WL 7429871, at *5 (W.D. Okla. Dec. 31, 2014) (adopting recommendation of Mag. J.);

14

*accord Jimison ex rel. Sims v. Colvin*, 513 Fed. App'x 789, 792 (10th Cir. 2013) (unpublished op.).

"The option to sit or stand at will permits the claimant to control the frequency at which she alternates positions. No greater specificity would be possible." *Jimison*, 513 F. App'x at 792.

In rejecting a similar argument, one court has described it as "border[ing] on the disingenuous" and stated: "The ALJ's directive that the Plaintiff may sit or stand 'at will' constitutes a clear direction that it is for the Plaintiff to determine when and for how long she sits or stands." *Nicholson v. Colvin*, No. 3:14-CV-1819, 2015 WL 1275365, at *10 (M.D. Pa. Mar. 19, 2015). Absent some "indication that the VE was in any manner confused by this directive," including a sit-stand option at will does not make the hypothetical too vague and does not impact a VE's assessment of employability. *See id.*

For all of these reasons, the Court should find no error in using the phrase "at will" in the context used in this case.

### 2. Consideration of Opinions of Consultative Examiner

Claimant argues that the ALJ did not evaluate "Dr. Osborn's opinion regarding [her] inability to adapt to change, cope with stressful situations, or maintain pace."   (ECF No. 16 at 9). Dr. Osborn conducted a consultative examination of Claimant in November 2013.   R. 398-401. The ALJ specifically discussed this examination.   R. 16-18, 23-25.

More particularly, when assessing Claimant's ability to understand, remember, and apply information, the ALJ considered the consultative examination and stated: "Considering the foregoing factors, particularly with the limitations in concentrate, persist, or maintain pace as discussed below, I find the claimant has a moderate limitation in this area, in that she is limited to simple tasks."  R. 23.   When assessing Claimant's ability to concentrate, persist, or maintain

15

pace, the ALJ again relied on the consultative report as well as other medical evidence of record, including a statement of a treating physician, David Longley, D.O.   R. 24.   In response to a Treating Physician Mental Functional Assessment Questionnaire, Dr. Longley stated that Claimant had no "mental condition that imposes more than minimal limitations."   R. 375. The ALJ specifically noted that statement and after considering the evidence, he "afforded Dr. Osborn's opinion great weight based on his examination, in finding the claimant is limited to simple tasks" and found "the claimant has a moderate limitation in this area," i.e., ability to concentrate, persist, or maintain pace.   R. 24.

As the Commissioner points out, "it is facially evident from the text of the ALJ's decision that the ALJ accepted and relied upon Dr. Osborn's consultative report."   (ECF No. 17 at 10). Furthermore, Claimant relies on a specific part of the consultative examination in which Dr. Osborn states no definitive medical opinion.   He instead states: (1) "Her ability to adapt to change and cope with stressful circumstances may be limited to some degree by her report of anxiety and insecurity and how to respond to situations, especially regarding her work-related tasks and performing at a faster rate" and (2) "Her ability to maintain pace without intrusive symptoms may be effected [sic] by her ADHD."   R. 400.   The use of "may" reflects uncertainty as to any limitation in these areas.   Moreover, based on all the factors considered, Dr. Osborn set out his psychological diagnoses, but did not set out any specific functional limitations regarding Claimant's abilities to adapt to change, cope with stressful situations, or maintain pace. R. 398-400.

Given all of the forgoing, there appears to be no error by the ALJ in his consideration of the medical opinions of the consultative examiner, Dr. Osborn.   *See Jones v. Berryhill*, No. 4:18-

16

CV-2043, 2019 WL 2174237, at *4 (S.D. Tex. May 20, 2019) (finding no error on similar argu-

ment by a claimant).    In addition, in general the Commissioner gives

> more weight to medical opinions from your treating sources, since these sources
> are likely to be the medical professionals most able to provide a detailed,
> longitudinal picture of your medical impairment(s) and may bring a unique
> perspective to the medical evidence that cannot be obtained from the objective
> medical findings alone or from reports of individual examinations, such as
> consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2).    Thus, it appears reasonable for the ALJ to rely on the statement from

Dr. Longley to at least partially detract from the opinions of the consultative examiner.

For these reasons, the Court should find no error by the ALJ in the consideration given to

the opinions of Dr. Osborn.

## CONCLUSION

For the reasons set forth in this Report and Recommendation, the Court should find that

the Commissioner committed reversible error when the ALJ failed to ask the vocational expert

about conflicts between his testimony and the Dictionary of Occupational Titles.    It should also

find that that failure also violated the remand order of the Appeals Council and 20 C.F.R. §

404.977(b).    Based on these errors, the undersigned **RECOMMENDS** that the district court

**REVERSE** the Commissioner's decision to deny benefits and **REMAND** this case for further

consideration consistent with this recommendation.    Because the parties have not consented to

proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to

**REASSIGN** this case to Senior District Judge Sam R. Cummings in accordance with normal

procedures.

A copy of this Report and Recommendation shall be served on all parties in the manner

17

provided by law.   Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).   In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.   An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.   Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error.   *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**IT IS SO ORDERED on September 4, 2019.**

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

18